# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTHONY BAILEY,

     Plaintiff,

v.

CITY OF NORTH LAS VEGAS POLICE
DEPARTMENT, *et al.*,

     Defendants.

Case No. 2:09-CV-02281-KJD-PAL

**ORDER**

Before the Court is the Motion for Summary Judgment (#43) filed by Defendants City of North Las Vegas Police Department, Sam Enriquez, and David Molnar (the "City Defendants"). Plaintiff filed an opposition (#47) and City Defendants filed a reply (#56).  Also before the Court is the Motion for Summary Judgment (#44) filed by Defendant Las Vegas Metropolitan Police Department and Defendant Danielle McKan ("LVMPD").  LVMPD filed a supplement to its Motion (#46), Plaintiff filed an opposition (#49) and LVMPD filed a reply (#55).

I.  Background

Plaintiff was arrested on February 28, 2009, when police officers responded to a 911 call reporting that Plaintiff raped and attempted to kill his girlfriend.  When officers from the North Las Vegas Police Department ("NLVPD") arrived at the scene, the alleged victim answered the door

naked from the waist down.  Based on her demeanor and gestures, the officers believed that a crime had occurred.  The officers, including Officer Molnar, ordered Plaintiff to leave the bedroom where he was sleeping, arrested him, and detained him in a police car.

Plaintiff was held at the North Las Vegas Detention Center ("NLVDC") until April 7, 2009 when he was transferred to Clark County Detention Center ("CCDC").  While at NLVDC, Plaintiff claims he started receiving medication for high blood pressure.  Plaintiff received medical care while at CCDC.  On June 26, 2009, Plaintiff sought release from CCDC to a house arrest program by filling out a House Arrest Application.  On this application, Plaintiff did not identify hypertension in his medical history.  Plaintiff was processed for release to the house arrest program on July 17, 2009 by Officer McKan.  During the processing he did not indicate that he was taking any medication for hypertension.  As a condition of release to the house arrest program, Plaintiff signed a contract acknowledging that he was aware of the rules concerning obtaining medical care.  He also indicated that he would seek approval for any medical appointments and promptly notify jail officials if he obtained emergency medical care.  While on house arrest, Plaintiff repeatedly took unauthorized absences from his home, as evidenced by a GPS monitoring bracelet and by his own admission.  He did not seek professional medical care.  Plaintiff was arrested and returned to CCDC on July 30, 2009.

When Plaintiff was returned to CCDC, he was screened by a nurse who determined that he needed immediate medical care relating to his hypertension. Plaintiff was transported to University Medical Center and treated for symptoms relating to his hypertension.

Plaintiff makes various constitutional claims arising from his arrest and incarceration.  Plaintiff has never filed a grievance relating to this incident.  Instead, Plaintiff commenced this suit by filing a motion to proceed *in forma pauperis* on November 30, 2009.  Plaintiff also filed a suit in state court naming two of the responding officers and the NLVPD, alleging federal civil rights violations arising out of his February 28, 2009 arrest.  The City of North Las Vegas removed the state court suit to the District of Nevada on August 17, 2010 as Case No. 2:10-cv-01398-PMP-LRL.

1    In January 2011, Judge Pro granted a Motion for Judgment on the Pleadings dismissing

2    NLVPD.  On April 28, 2011 Judge Pro granted a Motion for Summary Judgment against Officers

3    Enriquez and Winfield, two of the responding officers.  Plaintiff voluntarily dismissed all claims in

4    this action against NLVPD and Officer Winfield (## 51, 58).  His only remaining claims are against

5    Officer Molnar, Las Vegas Metropolitan Police Department, and Officer McKan.

6    II.  Analysis

7        A.  Legal Standard for Summary Judgment

8    Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

9    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

10   material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

11   P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

12   initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

13   323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

14   genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

15   587 (1986); Fed. R. Civ. P. 56(e).

16   All justifiable inferences must be viewed in the light must favorable to the nonmoving party.

17   See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

18   allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

19   or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See

20   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

21   issues of controversy in favor of the non-moving party where the facts specifically averred by that

22   party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497

23   U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

24   (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

25   issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without

26

3

1  more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v.

2  Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

3      Summary judgment shall be entered "against a party who fails to make a showing sufficient

4  to establish the existence of an element essential to that party's case, and on which that party will

5  bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

6  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

7      Plaintiff is representing himself *pro se*.  Courts must liberally construe the pleadings of *pro se*

8  parties.  See United States v. Eatinger, 902 F.2d 1383, 1385 (9th Cir. 1990).  However, "a district

9  court is 'not required to comb the record to find some reason to deny a motion for summary

10  judgment.'" Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir.2001); see

11  also Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir.1986) ("pro se litigants in the ordinary civil

12  case should not be treated more favorably than parties with attorneys of record.").

13      B.  Claims Against Officer Molnar

14      Plaintiff has voluntarily dismissed his claims against all City Defendants except Defendant

15  Molnar.  Plaintiff claims that Defendant Molnar violated his Fourteenth Amendment rights when he

16  and other officers drew their guns and ordered him to exit the bedroom of his girlfriend's home while

17  he was naked, then arrested and detained him.  Defendant Molnar contends that the claims against

18  the City Defendants are barred by res judicata.  Further, Defendant Molnar claims that, as a matter of

19  law, he acted lawfully and that he is entitled to qualified immunity.

20      1.  *Res Judicata*

21      "*Res judicata* is applicable whenever there is (1) an identity of claims, (2) a final judgment on

22  the merits, and (3) privity between parties." Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298

23  F.3d 1137, 1143 n. 3 (9th Cir.2002) (citing Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708,

24  713 (9th Cir.2001)).

25      Plaintiff's claim against Defendant Molnar is barred by *res judicata*.  Both this case and the

26  case before Judge Pro are based on similar claims about Plaintiff's arrest and detention on February

4

1    28, 2009.  Both complaints concern the actions of the officers in ordering Plaintiff to leave the

2    bedroom while unclothed, taking him into custody and detaining him.  The claims asserted here

3    could have been asserted against Defendant Molnar in the prior action.  This satisfies the identity of

4    claims requirement.  See Id. ("Identity of claims exists when two suits arise from the same

5    transactional nucleus of facts.")

6          Judge Pro's granting of the Motion for Judgment on the Pleadings and the Motion for

7    Summary Judgment operated as final judgments on the merits in that case.  Finally, the other officers

8    named in the suit before Judge Pro (and originally named here) represent "precisely the same right in

9    respect to the subject matter involved" in this case.  Shaw v. Hahn, 56 F.3d 1128, 1131-32 (9th

10   Cir.1995) (finding privity when the interests of the party in the subsequent action were shared with

11   and adequately represented by the party in the former action).  Plaintiff has not provided a

12   meaningful response to Defendant Molnar's res judicata argument.  Accordingly, summary judgment

13   is granted in favor of Defendant Molnar on the basis of *res judicata*.

14                    2.  Actions of Defendant Molnar

15          Even if Plaintiff's claims were not barred by *res judicata*, the undisputed facts show that

16   Defendant Molnar's actions did not violate Plaintiff's constitutional rights.  Probable cause exists

17   when under the totality of circumstances known to the officer, there is "a fair probability or

18   substantial chance of criminal activity."  U.S. v. Brooks, 367 F.3d 1128, 1134 (9th Cir. 2004)

19   (finding probable cause where occupant of hotel room confirmed to officers a recent argument and

20   presence of woman at scene of reported assault).  Exigent circumstances justifying a warrantless

21   entry exist when there is probable cause and a reasonable person would believe that entry is

22   necessary to prevent physical harm to the officers or other persons, the destruction of relevant

23   evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law

24   enforcement efforts.  Id..3d at 1135.  When effectuating a lawful entry, "officers may take reasonable

25   actions to secure the premises and to ensure their own safety and the efficacy of the search."  Los

26   Angeles Co. v.  Rettele, 550 U.S. 609, 614 (2007) (officers acted reasonably in ordering unclothed

1   suspects out of bed at gunpoint where there was a possibility that a weapon could have been

2   concealed in the bedding).  Finally, officers effectuating a search have authority to detain persons

3   suspected of violent crime for reasonable periods.  Muehler v. Mena, 544 U.S. 93, 100 (2005) (three-

4   hour detention in police car did not give rise to constitutional claim).

5          Here it is undisputed that the officers responding to a 911 call reporting a rape and violent

6   assault were met at the door by a woman who was naked from the waist down.  The woman appeared

7   scared.  When she was asked if anyone else was in the house, she shook her head side-to-side, but

8   indicated with her eyes to the officers that someone else was in the apartment.  Given the 911 call,

9   the dress, demeanor, and conduct of the woman, and the totality of the circumstances, the undisputed

10   facts support a finding that Defendant Molnar acted with probable cause and under exigent

11   circumstances when he entered the apartment.  Further, the undisputed facts indicate that Defendant

12   Molnar and the other officers acted reasonably under the circumstances when they ordered Plaintiff

13   to leave the bedroom, placed him under arrest, and detained him.  Plaintiff has not provided any

14   meaningful opposition to the argument of Defendant Molnar. Accordingly, the Court finds that

15   Defendant Molnar's actions were constitutional.

16                3.  Qualified Immunity

17          The defense of qualified immunity protects "government officials . . . from liability for civil

18   damages insofar as their conduct does not violate clearly established statutory or constitutional rights

19   of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

20   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

21   law."  Officers can have a reasonable, but mistaken, belief about the facts or about what the law

22   requires in a certain situation. Saucier v. Katz, 533 U.S. 194, 202 (2001); Estate of Ford v.

23   Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).

24          Here, the undisputed facts show that Defendant Molnar acted with probable cause under

25   exigent circumstances and acted reasonably.  There were no constitutional violations.  The

26

1   undisputed facts also show that Defendant Molnar did not knowingly violate the law.  Accordingly,

2   Defendant Molnar is entitled to qualified immunity.

3         B.  Claims Against LVMPD and Defendant McKan

4              1.  Defendant McKan's Interaction with Plaintiff

5         In order to state a cognizable § 1983 constitutional violation, a prisoner must allege acts or

6   omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  See

7   Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A deliberate indifference claim contains both an

8   objective and subjective component:  the prisoner must show that he was "confined under conditions

9   posing risk of 'objectively, sufficiently serious' harm," and that "the officials had a 'sufficiently

10  culpable state of mind' in denying the proper medical care."  Clement v. Gomez, 298 F.3d 898, 904

11  (9th Cir. 2002) (quoting Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)).  Indifference can be

12  manifested by officials in intentionally denying or delaying access to medical care or intentionally

13  interfering with the treatment once prescribed.  See Id. at 104-05.

14        It is undisputed that Plaintiff failed to disclose that he was receiving hypertension medication

15  in his application for release to house arrest.  Plaintiff has testified that at that time he "didn't take

16  this hypertension thing too seriously."  Defendant McKan only met with Plaintiff on one occasion

17  before his alleged injury – when he was briefed on the rules of the house arrest program.  At that

18  time, Plaintiff signed a form stating "I ... agree that I will remain at my residence at all time when not

19  excused for a pre-approved absence" including doctor's appointments.  When Plaintiff checked in at

20  CCDC after his first week of house arrest, he made no mention of high blood pressure or blood

21  pressure medication.  Although he left his house several times, while on house arrest, there is no

22  evidence Plaintiff tried to obtain professional medical care.

23        The crux of Plaintiff's claim is that Defendant McKan demonstrated deliberate indifference

24  while she was briefing him on the rules of house arrest when she allegedly forbade him from leaving

25  his house for medical care during the first week of his house arrest.  Defendant McKan denies that

26  she made this statement.  Defendant McKan has provided the form signed by Plaintiff at the time he

1  was processed for the house arrest program clearly indicating that he was allowed to leave his house

2  for both pre-approved doctor's visits and emergency medical care.  Plaintiff's claim that Defendant

3  McKan told him he could not leave his house during the first week of house arrest is insufficient to

4  create an issue of material fact.  See Villiarimo 281 F.3d at 1061 ("[U]ncorroborated and self-serving

5  testimony," without more, will not create a "genuine issue" of material fact precluding summary

6  judgment).

7          The conditions of confinement, as acknowledged by Plaintiff, provide for access to medical

8  care and do not pose an objective risk of serious harm.  Further, Plaintiff failed to properly notify

9  Defendant McKan that he was taking blood pressure medication, and that he had hypertension.

10 Plaintiff has provided no facts refuting Defendant McKan's affidavit and evidence showing that she

11 did not act intentionally or with a culpable state of mind.  Accordingly, summary judgment is granted

12 in favor of Defendant McKan.

13          C. Claim Against LVMPD

14         A local government may not be sued under § 1983 for injury inflicted solely by its employees

15 or agents.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).  To impose Section 1983

16 liability on a municipality, a plaintiff must demonstrate: (1) that the plaintiff possessed a

17 constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

18 policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the

19 policy is the "moving force behind the constitutional violation."  Plumeau v. School Dist. No. 40

20 County of Yamhill, 130 F.3d 432, 438 (9th Cir.1997) (quoting Oviatt By and Through Waugh v.

21 Pearce, 954 F.2d 1470, 1474 (9th Cir.1992)).

22         Plaintiff has provided none of the required elements to recover against the LVMPD.  As

23 discussed above, he has shown no constitutional violation.  He has not pointed to any policy that

24 amounts to deliberate indifference, or that such a policy was a moving force behind the actions of

25 Defendant McKan.  Accordingly, summary judgment is granted in favor of LVMPD.

26

III.  Conclusion

IT IS HEREBY ORDERED that the Motion for Summary Judgment (#43) filed by Defendants City of North Las Vegas Police Department, Sam Enriquez, and David Molnar is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (#44) filed by Defendant Las Vegas Metropolitan Police Department and Defendant McKan is GRANTED

DATED this 7th day of December 2011.

_____
Kent J. Dawson
United States District Judge